IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS

BRUD ROSSMANN, ESQUIRE
C/O  SAWTOOTH CAPITAL LLC
6210 GIBSON LANE
TEXARKANA, TX 75503
TEL. 202-534-0693
EMAIL. BROSSMANN1@YAHOO.COM

**FILED**

SEP 2 9 2016

Clerk, U.S. District Court
Texas Eastern

    Plaintiff,

V.

CIVIL NO. 5: 16cv 149

ANTHONY SCARAMUCCI
Skybridge Capital
527 Madison Avenue, 16th Fl.
New York, NY 10022.
P: +1.212.485.3100.

Email:

AND,

JOHN DOE-1,
JOHN DOE-2,
AND JOHN DOE-3

    Defendants

1

**COMPLAINT**

I.

**INTRODUCTION**

1. The Plaintiff, Brud Rossmann, a former decorated Trial Attorney of the U.S. Department of Justice, receiving 徹 utstanding�performance reviews when handling both National Security matters and Billion Dollar cases, Honors graduate of Harvard Law School, (cum laude, 1989), excellent reviews when managing a leading investment fund, with possibly Best in World Investor status and financial returns, as the best fund manager of the world's arguably leading venture capital fund of all time, and recipient of a community service award from the Attorney General of the United States of America for his volunteer work in the African American community of Anacostia, MD, outside of Washington, brings this Complaint1.

---

1     This filing is yet again corrupted, hacked, compromised- poor writing, poor syntax, etc. Well below the level that Brud Rossmann, honors graduate of Harvard Law School, cum laude 1989, would generate.   However, in the interest of timeliness –   and where the data, the information, found herein, is in fact CORRECT in all or most material respects, i.e. the essential FACTS,   as reported, as contextualized, retrospectively, and only possibly retrospectively given what has been contrived otherwise – this far less than perfect complaint filing of Brud Rossmann is lodged for immediate filing and docketing as filed.

2. Recent confirmations of both his professional acumen and mental health are robust, unanimous and belie his cashless, homeless, jobless, and unemployable status over many years now.   In other words, Brud Rossmann, the Plaintiff, should be worth about $50 million, per statements, estimates of Anthony Scaramucci, Skybridge Capital, (7/1/02:   "you are a guy who someday will probably be worth $50 to $100 million", near verbatim), IRS reporting, other sources, but instead pleads from the position of in forma pauperis, pro se, cashless, jobless, homeless, unemployable and over many years.

3. Defendant in agency with Ron Peele, Mark Gembicki, Scott Donaldson, or others currently or formerly employed by SAIC, as government contractors, or legal agents,  or as principal has engaged in scaled theft of Brud Rossmann's property for years, using primarily cyberspace or other network based tactics, as confirmed by a host of data, many ground level natural person witness statements, official IRS and New York State findings and rulings, and even admissions against interest by Defendant.

4. The theft and other destruction of Plaintiff's property was effected in the context of Research and Development (R&D) and related projects paid for the US government in part, under National Security highest level authorities and agencies, and private sector persons in part.  The R&D overlay, authorized and paid for by the government or paid for by private sector sponsors, was abused by network technology operators like Defendant or those serving in agency for defendant.

5. They - to include Lennert Leader - almost murdered Brud Rossmann on many occasions, extremely tortured him, falsely imprisoned him, and on bases proven both evil and grossly stupid.

6. Defendant, in such Agency, or as principal, engaged in "shock the conscience" abuses of Brud Rossmann's person and property, perhaps unprecedented in CIA, FBI, NSA, (explicitly declared authorities, 10/2002), Israeli, and other "government" History, given Brud Rossmann's essential legal status, a natural US citizen, innocent of any material criminal charge brought or ever possibly brought against Brud Rossmann.

7. CIA, FBI, and NSA and Israeli Prime Minister level sponsorship of such homicidal targeting was explicitly invoked, and otherwise referenced, on many occasions in 2002 – starting in October, 2002. This low-end murderous scum includes Susan Bell, Scott Donaldson, formerly of SAIC, Patti Henricks, Shelly Bowan, formerly of SAIC, Mark Gembicki, The Resilient Corporation, Andrew Reese, Ray Regan, many at AOL, to include Ken Lowenthal, Ron Peele, $100 million net worth, Y2000 reporting, Jay Dunn, Len Leader, $1 billion net worth, Ron Peele, multiple reports, y2000, if not David Colburn, John Cowles, JCE, CLA, Courtland Homes, Steve Case, AOL, estimated $2 billion net worth Y2000, and many others – including possibly Jamie Dimond, CEO/Chair of JP Morgan Chase, Anthony Scaramucci, Skybridge Capital, now a Great Man, formerly but the Moocher, many others.    Others implicated directly are named elsewhere, in official proceedings, and include, without limitation, John Abbott, JCE, CLA, Courtland Homes, Debra Murray, JCE, CLA, Courtland Homes, Debbie James, JCE, Courtland Homes, CLA, many others.   All or a portion are proven guilty in IRS rulings in favor of Brud Rossmann on Theft and Casualty bases.   Total witness count is 300 to 400 natural persons, maybe more.   Those culpable may be at the same levels of headcount, 300 to 400, as the facts played.

8. The IRS has ruled for Brud Rossmann and against Defendant or Defendant legal agents on many occasions.  Several Theft or Casualty based refund claims were awarded to Brud Rossmann starting in 2006, and are evidenced to extend to 2011 if not beyond. The Taxpayer Advocate Service at relatively high levels continued to support Brud Rossmann's refund claims on loss bases at varying levels through 2012 if not today.

9. The Theft and Casualty Loss based refund legal bases included real property and personal property stolen or destroyed by Defendant over many years.   The financial Scale previously estimated by the IRS is extraordinary and since extremely well evidenced across an array of data as supporting much larger loss based refund claims than those first paid in 2006-2007.

10. For example, the IRS, Brenda Miller, EID 50-xxxxxx33, fashioned a wholly indefensible loss adjustment formula, defining $10 million to $1 loss ratios, claims assertable in Brud Rossmann's name, or ~$80,000 x $10,000,000.00 = $800 billion, on some third party reporting. Brud Rossmann "pled" but a single townhome loss, $650,000 or so sale price versus the $565,000 documented, and realized.

11. New York State official rulings for Brud Rossmann on alternative bases, in connection with legal licensing, and his continued Good Standing as an attorney, as well as Tax authority findings in Virginia, DC, or New York State, also have confirmed the essential allegations of Brud Rossmann's claims against Defendant as principal or in agency.

12. Defendant has even admitted to liability via such agency or as principal in certain instances.

13. Under common law conversion and fraud doctrine, the two (2) claims pled first, the Defendant in agency or as principal has both GAAP based liability to Brud Rossmann, and related tax fraud or other tax accounting based liability evident in claims and evidence still before the IRS.

14. The Defendant or his or her agents have previously refused to negotiate or otherwise engage on these and related claims of proven theft and other injuries clearly attributable to Defendant.

15. Defendant has failed to produce required documentation, concealed such proof, and otherwise engaged in actions or inactions supporting the application of Equitable Tolling doctrine – making the claims timely.

16. The Plaintiff seeks compensatory damages in the amount of Ten Million Dollars ($10,000,000.00), as well as injunctive and declaratory relief.   Punitive damages may also be sought in the amended complaints.

II.

## JURISDICTION AND VENUE

12. This is a civil action over which original jurisdiction is vested in this Court by 28 U.S.C. 1331, 1332, and 1343.[2]

---

2       The pled allegation numbering has been corrupted.   Many attempts to correct paragraph numbering have failed.   This is more proof of network based corruption of Plaintiff's filings – other corruption of his words, his ideas, his proof, far more serious.

13. Diversity jurisdiction exists under 28 U.S.C. 1332.  The Plaintiff has established a residence as well as sited related property interests in this jurisdiction, real property, held in his name or for his benefit (word choice), on the tax accounting and other property bases reported by the government.

14. The prior findings and rulings of the IRS as of 2010 extended his claims under tax fraud or related bases alone to Ohio, Virginia, New York, New Jersey, Arizona, District of Columbia, Florida, California, Delaware, and other states.

15. Derivative expressions of Brud Rossmann's real property or personal property as booked tax bases, derivative assets, such as liquidation value held in cash balances on the sale or other monetization of Brud Rossmann's property, and other property "derivatives", have been previously evidenced in official JP Morgan Chase subsidiary accounts in Brud Rossmann's name, the cash unreturned, and other property never returned to Brud Rossmann.  Defendant has been implicated in these thefts or related injuries to Brud Rossmann's property interests.

16. This Court has pendent or supplemental jurisdiction pursuant to 28 U.S.C. 1367 over all other claims that are so related to claims within its original or exclusive jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

17. Where the instant causes of action ultimately define an action in rem or quasi in rem, to include property interests held in bank accounts, via land records recordings, or in derivative instruments reflecting the Financing of such property or rights to continued financing or re-financing, jurisdiction is also supported by the enabling statute, the Rules Enabling Act, and Federal Rule of Civil Procedure Supplemental Rule A and Rule E. Actions in Rem and Quasi in Rem: General Provisions. Colorable factual bases for this further jurisdictional basis are pled below.

18. The exclusively Federal nature of many of the claims presented below supports Federal court jurisdiction to the exclusion of state court jurisdiction — at least in the first instance. Diversity jurisdiction also exists.  Pendent jurisdiction or supplemental Federal jurisdiction is well-supported on grounds of a "common nucleus of operative fact" -- as established by concurrent timing, largely identical actors, the identical underlying transactions in question, and related evidentiary bases defining casualty and theft events across jurisdictions and various actors in this jurisdiction and others.

19. Venue is appropriate in this Court under 28 U.S.C. 1391.

### III.

### **PARTIES**

### *Brud Rudolph Rossmann, Esquire*

20. Plaintiff resides and has property in this jurisdiction.

21. Plaintiff is a successful professional, graduate of Harvard Law School (cum laude, 1989), graduate of University of Michigan, earning two (2) degrees in four (4) years, a M.P.P. and A.B. in Economics, taking Ph.D level classes in Economics, Math, and former Trial Attorney of the U.S. Department of Justice who received "Outstanding" reviews while handling Billion Dollar cases and National Security matters. Compare Exh. Sec. 1   At

the Department of Justice, Brud Rossmann received a Community Service award from the Attorney General of the United States of America for his volunteer service to the African American community of Anacostia, Maryland.

22. On government and private sector reporting, 2009, he may have rated best in world investor on certain metrics, <u>venture capital</u>, **~$62.3 million direct investments, 18 companies, 21 investments, ~$110 million cash profit, none of it returned to Brud Rossmann**, per the Agreement between Len Leader and Brud Rossmann, 11/2000, Henricks acting in Agency with Leader, instead all of it pocketed unlawfully by Defendant as Principal or in Agency, as well as Patti Henricks's associates, family members, Ron Peele, Steve Case, AOL LLC, AOL Time Warner Investment Corp, other Interests.

23. Most recently, he has received Excellent reviews serving as Director, Economic Development, for a Washington, DC non-profit, has earned Excellent or better reviews by every reporting client when serving as Of Counsel for a New York law firm, a "100" average when taking classes toward certification as a Microsoft Certified System Administrator (MCSA), a true "A" average while pursuing an MBA in the local MBA program, and other proof of current skills, acumen, work ethic, character, and work product.

24. Brud Rossmann is a current or former member of many community or civics organizations, serving in many capacities for the Good of the public.

25. On 1994 reporting, across the CIA, NSA, FBI, as first best estimates, Brud Rossmann's IQ score ranges possible to 182, 186, 187, average 185, many standard deviations from the mean of 100, above Mensa at 130, and better than Mark Gembicki's on all assessments across natural language, math language, other analytical disciplines, etc.

## *Defendant Anthony Scaramucci*

26. Defendant resides in this jurisdiction or has property in this jurisdiction.

27. Defendant is The Chairman, CEO of Skybridge Capital, a hedge fund in New York, New York.  His net worth is estimated at $200 million.

28. Defendant serves in various de facto National Security capacities, advertises as much with "SALT" (formerly Strategic Arms Limitation Treaty, USA-USSR MIRV reduction treaties, negotiated 1970s-1980s) conferences in Las Vegas, NV, putatively about financial sector concerns, and appears on CNBC with the "Scaramucci" view of the world on everything ranging from possible War with Iran, to Strategic Arm Limitation Treaty (SALT) level policy considerations, and to recommended short/long financial positions in overly-simplistic, 2-dimensional space to define profoundly more complex mathematical/financial equations.3

---

3      In Brud Rossmann's considered judgment, and knowing the Moocher for decades, this half wit Goombah moron could not figure out the combinatorics, the permutations, associated with SALT treaty computations, etc, if his Dago life depended on it.     Moocher probably should go back to school, learn some math, if not high level Finance, and then maybe, someday, in a life, far far in the future, he will be considered for (or by) the President of the United States, or some other high level position – to which he obviously aspires.     Brud to the Moocher.

29. None of this would be relevant and of no Interest to Brud
    Rossmann ever, a former friend of Anthony Scaramucci's, or
    better put, Scaramucci denoted a former friend of Brud
    Rossmann's – Brud Rossmann baptized by Scaramucci at Harvard
    Law School at Hemenway Gym, "any Christian can baptize any other
    Christian",  in 1987 on Scaramucci's insistence, Brud Rossmann
    invited to and attending Scaramucci's wedding in 1988, Brud
    Rossmann thought "well of" by Scaramucci's wife, Lisa Miranda
    – except that Anthony Scaramucci "sold out" Brud Rossmann in
    2002 when Brud Rossmann turned to Anthony Scaramucci as a "true
    friend" in the face of a Lennert Leader and Company led

lynchmob.4

---

4    Despite their prior relatively good friendship – E.G. ANTHONY
INSISTING ON BAPTIZING BRUD ROSSMANN AT HARVARD LAW SCHOOL IN 1987,
BOTH AT AGE 23, HIS LIFE, LISA MIRANDA, TAKING PHOTOS REGULARLY OF
THEIR SQUASH MATCHES, ETC – Brud Rossmann absolutely despises Anthony
Scaramucci, would enjoy wielding a  baseball bat and bashing his
brains in as a Jackson Pollock, artwork as created, his gray matter
splattered against the wall, as Brud Rossmann continued to bash in
his skull, over and over again, and for all the world to observe,
to behold and marvel.   Brud Rossmann has told Anthony Scaramucci
as much in writing, and others otherwise.   Brud Rossmann is not
kidding, and Brud Rossmann is more than correct here – Anthony and
his company are both very Evil and grossly Stupid.   There can be no
rebuttal. Brud to the Moocher.


Again, Brud Rossmann absolutely HATES Anthony Scaramucci and
forever.   Forever.   Forever.   (Those reading homosexuality into
this statement should also have their brains bashed in.   Brud
Rossmann points to the 1000s if not more psychological assessments
of Brud Rossmann, 110% heterosexual, extremely sane, extremely
reasoned, very bright, quite accomplished, quite "NORMAL", etc etc
etc.   See also the 5 14 2016 sketch, scanned into pdf format, and
emailed to dozens of persons at the FBI, IRS, DOJ, the White House,
other authorities, and many in the private sector, many emails,
6/2016 to date).

30. Brud Rossmann was fully known to Anthony Scaramucci, at that time, as an Innocent and Ignorant5, first notice 4/29/2002, late notice 12/23/2013, and other proof, if not definitions, of Brud Rossmann's Innocence and Ignorance compelling. Brud Rossmann is objectively accurate in this assessment; there can be no rebuttal.

31. Brud Rossmann was almost murdered on many occasions starting in 2002, was extremely tortured in 2002, was falsely charged and convicted of criminal charges in 2002, ultimately leading to an arrest and extended imprisonment, further destruction of Brud Rossmann's person and property, and Brud Rossmann's property (and person) were stolen at Scale – de facto enslavement, de facto conscription, de facto CIA abuses unprecedented in history.

---

5    This term has been defined elsewhere of many thousands of words, if not millions of words.    Brud Rossmann cannot summarize same here. Mark Gembicki's statements in 5/2002 ("child molesting" or "child pornography" by high level AOL Executives, detailed elsewhere, is but one ground level statement, proof).

32. Brud Rossmann intends to obliterate the "CIA", with sufficient resources, terms previously scoped, fully lawfully, and without limitation.  Put differently, Brud Rossmann intends to wield a hatchet and smash in the brains of the Central Intelligence Agency in public for all the world to behold and marvel – and similar "functions" at the FBI and DOD.

33. Scaramucci signed up to this Abomination in 2002 when Brud Rossmann turned to him for help, starting in or about May-June, 2002.

34. IRS rulings have confirmed Brud Rossmann's allegations in significant part, and the IRS has otherwise directly implicated Scaramucci in the Loss events giving rise to Brud Rossmann's Loss claims priced at simple townhome loss claim values, 2003 Loss Year, 2000 Carryback Year, and at a simple $650,000-$565,00 sale price differential as a first estimate.  In the process, Senior Field Examiner, EID 50-xxxxx33, defined a Loss Adjustment formula completely unsupported by Publication 547, other regulatory authorities, and on unconfirmed third party reporting defined both (a) a cross-tax year, cross-calendar year, Equity Notional, debt service cash, hybrid pricing formula "in line" with Debt/Equity REIT structures as of 2006-2007, instrument definitions of a similar variety, and complex enough to extend across all of Finance, Wall Street to Main Street and back again, and (b) a putative $800 billion loss claim possibility, $80,000 stated and adjusted loss claim value, at $10 million:$1 ratios as unlawfully asserted by third parties claiming tax benefits in Brud Rossmann's name under 12 Powers of Attorney or more in 2003, when but 1 was required, other Agency definitions, etc.

35. More simply, as of Y2002, when the CIA pulled the trigger, giving

    First Notice of Brud Rossmann's destruction on 4/29/2002, and

    the FBI and NSA joined in, as they effectively confessed

    5/3/2002, 3 p.m. Meeting, Tysons Field Office of the FBI, David

    Syracuse, his red-haired partner (the bad cop), and the NSA

    extern/intern, Scaramucci joined in on a lynchmob that cost Brud

    Rossmann his entire life - but for his death.  All of his

    property, all of his person in the usual sense, all meaningful

    definitions of opportunity, reasonable expectancy,

    Constitutional Democracy, the protections of law for a citizen,

    and other essentials.

36. Specifics:

37. May-June, 2002 sell-out:  Brud Rossmann had been almost shot

dead by police in Arlington, Virginia by a scumbag, Captain Alt,

on a contrived Event by Len Leader and Company, on June 12, 2002.

20 cops, SWAT team members, some carrying machine guns, stopped

Brud Rossmann as 2201 Wilson Boulevard, Arlington, VA,

completely unlawfully, and almost killed him.  Brud Rossmann

turned to his friends, to include Anthony Scaramucci, in a

series of telephone calls, email exchanges, other

communications toward (a) legal representation, and (b) to

determine the basis for the targeting and abuse of Brud

Rossmann's person and property.  Instead of acting in Good

Faith, "Moocher" sold out Brud Rossmann, cooperating with FBI,

SEC, IRS, CIA, and other officials, and under cover agents, to

effect a ramping lynchmob that almost killed Brud Rossmann

unlawfully many times over the many months that followed.

Anthony Scaramucci's colleague, M.D. George ___, on the same

Board as Scaramucci for Children's philanthropy, similar, was

a witness and proof to what happened, among many others – to

include even "Moocher's" wife, Lisa Miranda.

**38.** Anthony Scaramucci and Brud Rossmann had a series of telephone calls in June-July-August, 2002, toward "friend" help to Brud Rossmann.  All of these were toward the engagement of legal counsel, to protect Brud Rossmann's legal rights in the face of the ramping Targeting, and abuse of Brud Rossmann's property and person, or toward employment – for Brud Rossmann to make lawful income, to move forward.   Len Leader and Anthony Scaramucci, via intermediaries, in Agency, or otherwise, contrived these communications as but falsehoods, red herrings, and in the service of unlawful financial returns to Scaramucci, Leader, Ron Peele, Mark Gembicki, Scott Donaldson, Susan Bell, Shelly Bowan, and others, in Agency, as principals, or otherwise.

39. On or about 8/4/2002, Brud Rossmann drafted a Powerpoint
    presentation which outlined and detailed a series of abuses of
    Brud Rossmann's person, and property, by various officials of
    the Arlington County, VA police department (6/12/02), FINCEN,
    Treasury Department, other official police functions, Federal
    and local.   This was emailed to Anthony Scaramucci.   When Brud
    Rossmann met with Scaramucci, his "friend", when Scaramucci had
    previously insisted on baptizing Brud Rossmann, invited him to
    his wedding, which Brud Rossmann attended, and also maintained
    a friendship with Brud Rossmann over decades, Scaramucci (a)
    confirmed that he had received the 8/4/2002 powerpoint by email,
    and (b) mocked the presentation, mocked the objective accuracy
    of the allegations, and the abuses then extant and as known to
    Anthony Scaramucci.

40. Scaramucci then facilitated several meetings, all of which
    could have resulted in Brud Rossmann's arrest, conviction for
    fraud, "set ups" matched to the "vaporware" that supposedly
    defined the technology in which Brud Rossmann invested as the
    leading fund manager of AOL Investments, AOL Time Warner
    Ventures – with perhaps some Best in World Investor Venture
    Capital metrics EVER, on some government, private sector
    reporting 2009.

41. The first example was the "clothes for fat chicks" (as Scaramucci described it) start-up in the Lower East Side, below Houston, East of Soho.  This "opportunity" came by way of two (2) Jews, Scaramucci facilitating the meeting with management via Rick Lerner, his long-time friend, Lerner having read in Scaramucci's wedding (as Brud Rossmann knows, because he was there, West Hampton Lawn and Tennis Club, similar name, attended also by Bill Gump, John Lagomarsino, Jeff Moslow, Moocher's high school friend, half "Pollok" (spelling - derogatory shortand for Polish people), half Cuban, others), and Michael _____, another Jew, the brother of the proprietor of the vaporware "clothes for fat chicks" start-up on the Lower East Side.

42. The opportunity was no opportunity at all, but a set up for incarceration if and only if Brud Rossmann were a fraud, one who would invest in, or broker, that which was worth nothing, no value-add, no value.  Of course, on longer-term data, promotions of Brud Rossmann in Year 2000, 2 yeas before 2002, other exceptional performance, as well known to Anthony Scaramucci, then, beforehand, and since, Brud Rossmann was both (a) no fraud, and (b) perhaps a Best in World investor talent.

43. Second, Anthony Scaramucci admitted that he had mis-managed the situation.  He nervously called Brud Rossmann in 9/2002 when the "clothes for fat chicks" funding opportunity was "eschewed" by Brud Rossmann as nothing but vaporware.  Brud Rossmann, an innocent and ignorant at the time in almost every material sense, did not even think of the implications that unfolded in Scaramucci's name – the extreme torture of Brud Rossmann within days of Scaramucci's call, and over many months, continuing attempts on Brud Rossmann's life unlawfully, and proven grossly stupid over the belatedly disclosed, fuller set of data, and Brud Rossmann's false imprisonment.

44. Police officer statements at the time otherwise confirmed their guilt in the even-murderous targeting of Brud Rossmann by these grossly stupid scum, among others named elsewhere, proven guilty in IRS and other proceedings.  Their guilt is certain; there can be no rebuttal.

IV.

**FACTUAL BACKGROUND**

26

*MORE EXAMPLES ARE FOUND IN OTHER FILINGS.*

45. The crux of this initial complaint is a series of online or network effected thefts and other torts, with scaled theft and other injury to Brud Rossmann's personal reputation or other property otherwise proven in part in a series of prior IRS Theft and Casualty loss based refund claim proceedings, civil lawsuits, and other proceedings.  The bases for the IRS claims were historically unprecedented.

46. Put again, Brud Rossmann was paid on an unprecedented first three (3) of three (3) the IRS theft or casualty loss based refund claims when such claims are generally disfavored at approximately 90% levels.

47.  The a priori odds for Brud Rossmann's claims were about 1 in 1000 when his first three (3) loss claims were first presented, or 1/10 x 1/10 x 1/10 = 1/1000.   The IRS has never awarded three (3) such loss based refund claims in its history.

48. The means used to effect such losses, theft and other casualty were in large part network based hacking, spoofing, fraud, forgery, and various other violations of 18 USC 1030 among other statutory or common law authorities.

49. Abuse of wireless c4ISR platforms is well evidenced, proven, and admitted by various US Marines, DOJ attorneys, FBI and NSA agents, police officers employed by Fairfax County, Virginia, and many others since 2002.   They acted in Agency for Defendant on proof before the IRS, rulings in Brud Rossmann's favor, in proceedings in New York State, as well as the District of Columbia, and as further manifest in the the pled allegations found herein.   Exhibit proof will be annexed to the amended complaints to follow.

50. The theft and casualty losses via network means were reflected in electronically transmitted forms 1099-S to the IRS fraudulently in Brud Rossmann's name, dating back several years, and timed to the Real Estate Bubble and other outlier financial return periods.

51. Stepped up tax bases under IRC 754 "mixing bowls" were but a portion of the tax fraud effected in Brud Rossmann's name. Gaming of such tax bases may be worth billions of dollars on indexing proven before if not by the IRS, private sector Interests on Wall Street, and others.

52. Brud Rossmann was acquitted after several protracted IRS investigations, not only his innocence proven, but the criminal guilt of those operating in his name unlawfully, under abused Powers of Attorney and other unlawful vehicles, conclusively proven.  Several have been named, many are still to be named. They include, in the official rulings, persons with significant net worth, power, or position.  Several IRS officials were proven as highly compromised to include Senior Field Examiner Brenda Miller, EID 50-xxxxx33.

53. The thieves involved, including defendant, as principal or in agency, visited several other casualties on Brud Rossmann, including falsely reporting Brud Rossmann as a thief or putative tax fraud.

54. Defendant, as Principal, or in Agency, then concealed Defendant's theft of Brud Rossmann's property, and Defendant's other violations of law.  Defendant refused documentation and work product due Brud Rossmann over many years despite contractual and other legal obligations to produce such information.

55. The Defendant, as principal, or in Agency, actively engaged in one form of cover up after another, losing or stealing Brud Rossmann's correspondence, his refund claims, his Intellectual Property, his cash compensation for fund management successes at even "Best in World Investor" levels, and other property. The theft extended across private sector and public sector Persons, some with net worth at Billion Dollar levels; others abusing public sector authority in the extreme.

56. $110 million cash, at a minimum, earned by Brud Rossmann, was stolen, never credited to Brud Rossmann, and misreported as though Brud Rossmann had generated scaled, leveraged, or otherwise serious financial losses – such losses in fact effected only by Defendant, as principal or in Agency.  Such losses have been estimated by unsolicited third party sources at "insane" levels of loss or claim value, ranging from $400 million to $1-3 billion to $1 trillion to $222 Trillion to 10 to the 34th lien pricing value.

57. While claiming no notice of Brud Rossmann's legal claims against Defendant, Defendant, in principal, or in Agency, then continued to effect Scaled theft and casualty on Brud Rossmann's person and property.  Defendant was repeatedly put on notice of his position, his obligation, his failures by Brud Rossmann personally, to include notice given directly by emails, or otherwise, and over many years.   Defendant ignored all such notices as Warning, or worse.

58. The simple "Real Estate" losses found below are the first, simple bases for the causes of action as pled immediately following.  Amended complaints will follow.

## V.

## CAUSES OF ACTION

59. **Fraud**

60. Plaintiff repeats and re-alleges the allegations expressed above as if fully set forth herein.

61. **Applicable Law**

62.     **Legal elements required to be pled**

63. Under applicable Code, common law, and Federal Circuit law defining Rule 9(b), without limitation, fraud is defined by the following legal elements; each is pled specifically, matching the specific legal element to specific factual allegations, legal element by legal element.6

64. Under applicable law, to prove fraud, "[a] plaintiff must prove '(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation.'"

65. Legal Element #1.   "A false representation". Specific factual allegations against Defendant include the following, and without limitation.

66. Defendant or Defendant agents falsely represented, sold, marketed, financed, or "monetized" recorded

---

6    This further attempt by Brud Rossmann to lawfully exercise the Courts' power, to effect a legal disposition of this dispute, to report the facts accurately, has once again been corrupted, compromised, by persons abusing wireless c4ISR regimes – as proven in IRS proceedings, FBI and NSA proceedings, and otherwise.     The words are Brud Rossmann's in signnificant part, but the phrasing, the word choice, syntax, other elements of grammar, style, have been hacked, corrupted, compromised, and via wireless c4ISR regimes.     The proof is robust; there can be no rebuttal.

acreage in the Land Records for sale which Defendant knew was not lawfully available for sale; Defendant knew that such acreage was already sold, already booked as owned by prior homebuyers or other interests.

67. Defendant effected such fraud, via Defendant's own statements or actions or unlawful inactions, or those of Defendant agents, to include without limitation persons named and found liable in a host of IRS proceedings all finding for Brud Rossmann on theft and casualty loss bases involving both his personal and real property and related expectancies, cognizable intangibles under Publication 946, Publication 535, and otherwise cognizable property for purposes of the pled claims.

68. Cyberspace means were used in connection with ground level means to effect such fraud or false premises.

69. Among other fraud or forgery or other theft effected by defendant via cyberspace or ground level means, defendant as individual or in agency falsely represented that prefunding and overfunding of insurance and tax escrow were required for settlement of various transactions – real property acquisition,

refinancing, financing, or resale of such property.

70. Defendant falsely reported and otherwise misreported that this escrowed money was available for taxes and insurance payments when Defendant moved the monies around, to different accounts, and began a Ponzi Scheme (official IRS finding); the escrowed money was not available and not used for the agreed escrow purposes.

71. The scaled multiples of such escrow monies are documented at a first estimate of 19,000x multiple to funded escrow, possibly credited at $170,00 or so, $3.2 billion total claim value; such escrow was overfunded by Brud Rossmann from the beginning on Defendant's unlawful demand, and was stolen, destroyed on the willful and intentional fraudulent or otherwise false representations of Defendant as principal or in agency.

72. The multiples in capitalization are found in the Land Records of Fairfax County, Virginia, CPAN accessible online, exhibits found in the prior lawsuits of Brud Rossmann.  Several such claims paid previously by low-level Agents for Defendant, in settlement of Federal Court claims, but on limited information and

at pennies on the dollar.   DTA reporting online, IRS rulings and findings in connection with several Theft and Casualty loss based refund claims paid to Brud Rossmann, and many other official and third party records, prove Brud Rossmann's claims in the billions of dollars or so on third party estimates, unsolicited, extensive analyses and data provision by third parties, Brud Rossmann's own data and analyses, and official findings and rulings over several years.

73. Many of the key records have since been destroyed on the unlawful actions or unauthorized actions of certain third parties in Suffolk County, NY, (e.g. 5/17/2012 destruction of several bins of critical records, and about ½ terabyte of data in data backup CDs, hundreds of such CDs, about 50% of which was relevant to the claims here – 99+% of the best data in support of Brud Rossmann's claims, fortunately a good portion otherwise provable by third party sources, derivative data, and more sophisticated analyses of the data).

74. This and other proof of the multiples at such extreme levels, and beyond, are well evidenced.

75. As principal or in agency, Defendant also falsely represented the state of escrow and other accounts in Plaintiff's name, concealing the splitting, re-leveraging, and other unlawful Ponzi Scheme activities of Defendant (official IRS finding, 2011), making detection and earlier legal action impossible.

76. Legal Element #2.   "Made in reference to a material fact".   Specific factual allegations against Defendant include the following, and without limitation.

77. The misrepresentation of available acreage for financing, or other monetization, when it was already-spoken-for acreage, already owned, ground level, and not for sale or other monetization. Still, Defendant in Agency or as principal, further leveraged the false acreage, known as false to Defendant, and then refinanced, marketed, or monetized it.   All was effected intentionally to the prejudice and other injury or harm of Plaintiff and his neighbors, and was clearly a "material fact".

78. Defendant's false representations also related often, repeatedly, and over the full time period, Y2000 to

Y2012 and beyond, to misstated escrow balances of tax
and insurance monies -- cash monies booked and
accounted under GAAP and tax accounting rules under
Brud Rossmann's name -- that triggered tax or loan
account delinquencies and related foreclosure
proceedings all to the prejudice, harm or other
injury of Brud Rossmann at Scale.   Ground level sales
of "tax lots", gaming of tax map numbers as indicia
of title, and other Fraud to get "a piece of" the Real
Estate Bubble are well-evidenced.   All prejudiced
Brud Rossmann's position, his person and property,
at unprecedented levels, with continuing injury,
prejudice, harm to Brud Rossmann to this day.

79. On all reporting from all sources, though there was
no final foreclosure on Brud Rossmann's real property,
Defendant otherwise "illegally" converted or
misappropriated the funding by Plaintiff on or about
September 7, 2000, the Escrowed Taxes and Insurance,
into a "Ponzi Scheme". Exh. Sec. 2.

80. Defendant hid, concealed, or otherwise unlawfully
denied settlement, escrow and tax reporting due to
Plaintiff which both (i) concealed the Ponzi Scheme
of Defendant, and (ii) precluded a timely assertion

of Plaintiff's rights – while Defendant interests
continued to "play the market" with Plaintiff's money,
driving the multiples into an estimated millions of
dollars in value, very quickly.

81. The Real Estate bubble facilitated the conversion of
Brud Rossmannn's minor cash balances at about
$170,000 paid in cash into millions of dollars of
stolen and lost value at ground level; estimates of
derivative positions are estimated on extreme
analyses of data and logic in Q1 2011 at $1-3 billion.

82. Theft also extended to his person, his Intellectual
Property, his continuing interest in investment fund
positions, and other proof of his outlier Investor
performance, compensation long past due, and then
some.

83. Third party estimates, unnamed sources, estimates,
sources details documented elsewhere, many times by
Plaintiff, official filings included, range from
$400 million to $222 Trillion losses over 20 years
to 10 to the 34th lien pricing valuations.

84. Other personal property of Brud Rossmann was stolen
concurrently.

85. Such proceeds were stolen by Defendant, when

Defendant was fully noticed that (i) the escrowed funds were to used immediately and only for tax and insurance obligations, and (ii) any surplus or resulting proceeds were due to Plaintiff. Instead, Defendant stole these monies at the beginning, the resulting proceeds – the Defendant, in Principal or Agency, "Ponzi Scheme" found by the IRS.

86. When the Ponzi Scheme balances flowed from accounts sited in this jurisdiction, as well as other jurisdictions, and the Ponzi Scheme extended across the country, these false representations were clearly material.

87. Estimates range to "insane" levels, third party, unsolicited reporting, $400 million to $1-3 billion to $1 trillion to $222 trillion to 10 to the 34th lien pricing, as documented, proven elsewhere.

88. Cyberspace or other network based operations or tactics were employed to effect this fraud and other theft or casualty.

89. The amounts were repeatedly misreported, the payments delayed for crediting, misapplied to various accounts, and ultimately booked to scaled financial positions estimated by the IRS and other

credible sources in 2011 at possibly multi-Billion Dollar levels.

90. Some officially unconfirmed reporting indicated in 2011-2012 that modelled or otherwise estimated total loss or claim value could range to the truly "insane" levels of $222 Trillion over 20 years.

91. These estimates reflect more cybersecurity, even "cyberwarfare" gaming, and have been indexed to Brud Rossmann's property and losses now reflected here in the current litigation claims.

92. Legal Element #3.   "With knowledge of its falsity". Specific factual allegations against Defendant include the following, and without limitation.

93. Defendant or Defendant agents drafted the fraudulent plats and deeds recorded in the Land Records.

94. The Defendant likewise misrepresented Defendant's role in connection with an investigation of rival claims to the land at issue, and other real property or personal property, when Brud Rossmann engaged Defendant, or Defendant proactively engaged Brud Rossmann toward effecting theft of, or other injury to, Brud Rossmann's real property or other property interests.

95. Defendant in agency or as principal engaged Brud
Rossmann on a range of other matters all designed to
"bleed cash", distract him from the protection and
monetization of his real property interests defined
during the Real Estate Bubble, and to the personal
profit or other unlawful gain of Defendant.

96. Defendant acted knowingly to effect theft of or other
injury of Brud Rossmann's property interests, both
real property and personal property, and for his or
her own profit or other benefit.

97. Defendant admitted as much in a series of statements
or other actions over many meetings with or other
transactions involving Brud Rossmann.

98. Defendant's motives for such falsity, knowing
falsity, were clearly pecuniary, financial, at least
in part, and were admitted as such in the various
communications and other transactions between
Defendant and Brud Rossmann.

99. Defendant also unlawfully demanded overfunding of
Tax/Insurance escrow prior to, and at, settlement.
Then Defendant stole these monies.

100. The IRS has officially found both Defendant "Theft"
and a Defendant "Ponzi [scheme] loss".  Exhibit

Section 4.

101. Inherent in the definitions of each is mens rea, and the subsumed definition of "know[n] falsity."

102. The IRS's findings of a "Ponzi Loss" specifically implicated Defendant in agency or as principal on the broader range of principals and agencies defined with such finding.  The absence of any first premise for the theft, no acreage or no cash balances, was leveraged across many persons, including the Defendant, in agency or otherwise, and defined stepped up tax bases and financeable asset value as booked during the Real Estate Bubble as known to and benefiting Defendant.

103. Put in layman's terms, there are no "innocent Ponzi Schemes".  Nor is "Theft", the other official IRS finding, along with "casualty", to define the "losses", and antecedent to the 2011 finding of a Ponzi Loss, consistent with anything other than a "known" falsehood as perpetrated by Defendant.

104. In the absence of contrary statutory or regulatory definitions, "common usage" defines both "Ponzi [Scheme] Loss" and "Theft", the two official IRS findings pled herein. Both terms of art inarguably

connote "know[n] falsity"

105. Moreover, the financial and legal reporting by Defendant, incomplete, misrepresentative, and fraudulent on its face, over so many years, across so many Defendant entities, and on so many occasions, inductively leads to but one conclusion:  the false representations could not be happenstance, innocent, or other than with "Defendant knowledge".

106. Legal Element #4.  "with the intent to deceive". Specific factual allegations against Defendant include the following, and without limitation.

107. As with the pled facts supporting Defendant knowledge, the sheer number of false representations, great financial returns to Defendant, and official IRS findings of a Ponzi Scheme and Theft, Defendant's actions must be regarded as "with the intent to deceive".

108. On a "preponderance of the evidence" standard of proof, early in the litigation, Rule 8 or Rule 12 only applicable, such evidence, as pled herein (and selectively evidenced in the Exhibits or as expressly incorporated by reference in cross-referenced prior filings, prior Exhibits found on PACER), amply clears

the threshold pleading hurdle of "intent".

109. Moreover, the allegations above include the specific adverbs, adjectives, and other qualifying statements making clear that Plaintiff has pled an "intent to deceive"

110.    Legal Element #5.   "an action that is taken in reliance upon the representation".  Specific factual allegations against Defendant include the following, and without limitation.

111.    Plaintiff proceeded to fund his mortgage payments to Defendant, as principal or in agency, and without benefit, (i.e. he was deeded an unlivable home, no certificate of occupancy granted, profound construction defects proven, Real Estate without value, false or fraudulent acreage counts, and the residence with serious construction defects and no Certificate of Occupancy ever issued).

112.    At the same time, Defendant as principal or in agency proceeded to "play the market" with Brud Rossmann's cash, profit greatly, and never distributed the profits which Defendant clearly knew were Plaintiff's alone.

113.    There was indisputable reliance on the

Defendant misrepresentations and other lies;
Plaintiff clearly would not have continued to fund
$170,000 in cash or cash-equivalents without obvious
reliance upon Defendant misrepresentations.

114.    The actions of Defendant to proactively deceive
Brud Rossmann over many years are further proof of
such Brud Rossmann reliance, and only on false
premises actively and affirmatively contrived by
Defendant as principal or in agency with others.

115.    Plaintiff did not sue Defendant, or even attempt
to do so, when Defendant repeatedly lied,
misrepresented, or otherwise concealed material
information as to what it was doing with Plaintiff's
funds; Plaintiff clearly relied, to his prejudice,
and with no true opportunity to reclaim the profits
that were lawfully his alone.

116.    Plaintiff continued to pour cash into the
Defendant development, unwitting "good money after
bad", as far as Plaintiff was concerned, and lining
the pockets of Defendant or his Agents, by Theft, to
the tune of millions if not Billions of dollars in
Ponzi Scheme profits (official IRS finding).

117.

118.     **CONVERSION**

119. Plaintiff repeats and re-alleges the allegations expressed above as if fully set forth herei

120. **Applicable Law**

121.     Under applicable Code, common law, or applicable Circuit law, conversion is defined by the following legal elements; each is pled specifically, matching the specific legal element to specific factual allegations, legal element by legal element.

122.     Under Applicable law, conversion is defined as the "`intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel". Specific factual allegations follow.

123.     Legal Element #1.  "Intentional exercise of dominion or control over a chattel".

124.    Defendant intentionally exercised dominion or control over the escrowed funds of Plaintiff unlawfully, transacted illegally with Plaintiff's funds, and defined a Ponzi Scheme (official IRS finding).

125.    Defendant fraudulently converted Plaintiff funds when Defendant demanded full payment as prefunding, overfunding on Settlement, and immediately converted Plaintiff's funds unlawfully into a Ponzi Scheme; Defendant immediately converted these funds into off-lot, off-development proceeds and interests that were unwittingly funded by Plaintiff.

126.    Defendant fraudulently demanded full control over tax payments and insurance, illegal "dominion" at both the original settlement, and the refinancing on July 23, 2001, the real property tax and insurance escrow converted into unlawful land acquisitions and development funding by Defendant.

127.    The personal property of Plaintiff, "chattel", was thus subject to illegal, Defendant Ponzi Scheme dominion and control by Defendant.

128.    Legal Element #2.   "Which so seriously interferes with the right of another to control it"

129.    Defendant "so seriously interfered" with Plaintiff's right to control his $170,000 in cash balances that the IRS found both Defendant "theft" and a Defendant Ponzi Scheme, and awarded Plaintiff multiple "loss"-based refund payments on these specific legal bases.

130.    The IRS found in Plaintiff's favor on no fewer than four (4) occasions, with payments on four (4) separate dates, due to Defendant or Defendant agent "theft" and "Ponzi Scheme" losses.

131.    Legal Element #3.   "That the actor may justly be required to pay the other the full value of the chattel".

132.    Defendant must compensate Plaintiff on all legal definitions of "just[ice]"

133.    The IRS has found Defendant "theft" and a Defendant Ponzi Scheme, which means that Defendant "may justly be required to pay the other the full value of the chattel".

134.    Moreover, a host of proceedings since 2006-2007 have proven these Idiots both criminal and grossly stupid.   Plaintiff's IQ score, perhaps Best in World Investor status on some metrics, documented DOJ and AOL performance reviews, Valedictorian status, similar ratings, many schools, many jurisdictions, many assessors, across decades, are but a portion of the proof, Plaintiff's qualifications for the allegations, that these Idiots must go.

135.    VI.

136.    **PRAYER FOR RELIEF**

137.    1. Plaintiff requests in relief:

138.    2. Ten Million Dollars ($10,000,000.00) in compensatory damages, Defendants' liability pled as joint and severable, and

139.    3. Twenty Million Dollars ($20,000,000.00) or more, perhaps even Treble damages, in punitive damages, minimum, and

140.    4. Injunctive relief,

141.    5. Declaratory relief, and

142.    6. Such other relief as this Court deems proper.

Respectfully submitted,

Brud Rossmann, Esquire
Plaintiff
Date:   ~~August 17, 2016~~

9/27/16